UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

     MICHELLE CORBIN HILLMAN,

                             Case No. 22-10175
                             Chapter 11

                        Debtor.
_____

APPEARANCES:

Michael L. Boyle, Esq.
Boyle Legal, LLC
Attorney for Debtor
64 2nd Street
Troy, NY 12180

Douglas J. Pick, Esq.
Pick & Zabicki LLP
Attorney for Debtor
369 Leington Ave., 12th Floor
New York, NY 10017

Francis J. Brennan, Esq.
Nolan Heller Kauffman LLP
Local Counsel for Kurzman Eisenberg Corbin & Lever LLP
Attorney for Creditor
80 State Street, 11th Floor
Albany, NY 12207

Paul A. Levine, Esq.
Subchapter V Trustee
677 Broadway, 8th Floor
Albany, NY 12207

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

      Currently before the Court is ULM I Holding Corp.'s ("ULM") objection pursuant to the

Federal Rules of Bankruptcy Procedure ("Rule") 1020(b) to Michelle Corbin Hillman's

("Debtor" or "Hillman") designation as a "small business debtor" under subchapter V of Chapter

1

11. (ECF No. 28); 11 U.S.C. § 1182(1). The Court has jurisdiction via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[1]

## FACTS

On March 4, 2022, ("Petition Date") Hillman filed a voluntary petition electing to proceed as a small business debtor under subchapter V of Chapter 11. (ECF No. 1). In the Debtor's Schedule A/B, she claims a 50% equity interest in two business entities: Tom Murray USA Inc. ("Tom Murray") and Corbin-Hillman Communications Ltd. ("CHC"). (ECF Nos. 2 at 5 & 128 at ¶ 14). The Debtor's "Summary of Your Assets and Liabilities . . ." reflects total liabilities on the Petition Date of $957,038.00. (ECF No. 2 at 1). The parties have stipulated that the Debtor's aggregate debt on the Petition Date is below subchapter V's debt limit of $7,500,000.00 and not less than 50% of the Debtor's total debt arose from commercial or business activities of the Debtor. (ECF No. 133 at ¶¶ 1 & 2).

ULM is the Debtor's largest creditor having filed a general unsecured claim of $671,398.91.[2] (ECF No. 128 at ¶ 10). ULM's claim relates to a lawsuit before the Supreme Court of New York, New York County, ("State Court Action")[3] alleging the following three causes of action: (i) breach of contract based upon a default of a commercial lease agreement, (ii) breach of a personal guaranty and (iii) recovery of attorney's fees. *See ULM I Holding Corp. v. Hillman*, No. 650477/2019, 2020 N.Y. Misc. LEXIS 9587, at *10 (N.Y. Sup. Ct. Oct. 28, 2020). "CHC and Hillman separately answered the amended complaint, with Hillman verifying CHC's answer

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2023) (the "Bankruptcy Code").

[2] On May 16, 2022, the Debtor filed an objection pursuant to § 502 and Rule 3007 seeking to expunge ULM's claim in its entirety. (ECF No. 61). To date, the claim objection has not been adjudicated and remains pending before this Court. (ECF No. 128 at ¶¶ 12 & 13).

[3] ULM named both the Debtor and CHC as defendants in the State Court Action's amended complaint. (Claims Register 7-1, Ex. B).

as its president." *Id.* at *10-11. The Supreme Court of New York determined, "Hillman has not demonstrated that she completely severed her connection to CHC[,]" and "[she] has not presented any evidence demonstrating that she validly transferred or assigned her obligations to her son, or that her son agreed to undertake those obligations on behalf of [CHC], . . . ." *Id.* at *20, 21, *aff'd*, *ULM 1 Holding Corp. v. Corbin-Hillman*, 199 A.D.3d 543, 545-46 (N.Y. App. Div. 2021).

In Schedule A/B of her petition, Hillman lists CHC as "(Closed)." (ECF Nos. 2 at 5 & 128 at ¶ 14). In her Statement of Financial Affairs, the Debtor lists the State Court Action as "pending," which ULM does not dispute.[4] (ECF Nos. 4 at 2 & 28 at ¶ 3).

Unrelated to her ownership of CHC, the Debtor has also been an owner of Tom Murray since its incorporation under the laws of the State of New York on October 31, 2000. (ECF No. 128 at ¶¶ 16-18). Tom Murray is a marketing company whose primary asset is the last publicity photograph shoot that The Beatles did as a group. *Id.* at ¶ 19. The Debtor submits the following in support of Tom Murray's business activities: bank records with JP Morgan Chase Bank, N.A. of a corporate operating account with transactions occurring as recent as February 10, 2022; bank records of a Chase Credit Card which was utilized for both business and personal expenses; email exchanges reflecting ongoing dealings with certain art galleries; the sale of a signed and numbered print of The Beatles in January 2022; and current e-mail exchanges discussing sales opportunities. *Id.* at ¶¶ 24-30.

---

[4] Although no determination on the amount of the liability has been issued to date, Hillman was found to be personally liable on the personal guaranty of CHC's broken lease agreement. (ECF No. 128 at ¶¶ 8 & 9). ULM's proof of claim of $671,398.91 is comprised of unpaid rents through January 2019, February 2019 holdover rent plus late fees, March 2019 holdover rent plus late fees, statutory interest from 3/31/19 to 3/4/22, and legal fees through 3/4/22. (Claims Register 7-1, Ex. A).

Notably, the Debtor does not appear to have any liabilities as of the Petition Date which relate to Tom Murray. (ECF No. 2, Schedules D & E/F).

## ARGUMENTS

ULM submits "the Debtor is ineligible to elect to proceed with her case under Subchapter V of Chapter 11 . . . because she is not a 'person engaged in commercial or business activities … as of the date of filing of the petition.'" (ECF No. 138 at 4) (quoting 11 U.S.C. § 1182(1)(A)). ULM addresses each of the two businesses the Debtor lists on her petition. First, ULM submits that the Debtor herself acknowledges CHC is closed and has valued her ownership at $0.00 as of the Petition Date. *Id.* at 11. Next, ULM further asserts that the Debtor's "sole source of income post-petition is from Social Security and a distribution from an annuity, with no income from any alleged business venture . . . ." *Id.* at 8. Lastly, ULM asserts the Debtor's activities with Tom Murray may "be charitably characterized as a hobby, but clearly do not constitute being 'presently engaged in business or commercial activity' as of the [Petition] Date." *Id.*[5]

Hillman argues she has demonstrated "that she is entitled to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code." (ECF No. 134 at 1). She states, "[ULM's] Objection totally relies on an incorrect interpretation of documents filed with this Court, an incorrect interpretation of the Debtor's testimony at her first § 341 meeting of creditors and an incorrect reading of the statute itself." *Id.* Specifically, the Debtor alleges "[ULM's] error appears to be based on wrongly conflating 'business activities' to mean 'business operations.'" *Id.* at 2. The Debtor relies on the limited but undisputed business activities of Tom Murray. *Id.* at 2-3. Further,

---

[5] Regarding a separate but related issue, ULM acknowledges existing "caselaw holding that §1182(1)(A) does not require that the debts scheduled in the petition must relate to a debtor's alleged business activities . . . ." (ECF No. 138 at 12) (citing *In re Blue*, 630 B.R. 179 (Bankr. M.D.N.C. 2021). However, ULM submits "that the issues presented in this case are matters of first impression in this Court and such decisions are not binding precedent." *Id.* at 12-13.

4

she contends courts have interpreted "business activities" broadly without limiting the meaning to a company's historical "business operations," asserting the term includes "actively pursuing litigation against a third party, seeking to collect on [outstanding] accounts receivable, selling an asset, preserving asset value and having managers oversee the company while an independent contractor maintained [the company's] facility[ . . . .]" *Id.* at 14 (quoting *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 237 (Bankr. S.D. Tex. 2021)).

The Subchapter V Trustee, Paul A. Levine, Esq., ("Trustee") submits the Debtor "is defending a very large claim brought against her by ULM arising from her guaranty of the commercial lease between ULM and [CHC]." (ECF No. 136 at ¶ 6). He continues, "not only is [the Debtor] engaged in a business activity involving her former company, that activity is the defense of a claim arising from the lease of commercial real estate and is the very reason for the filing of this bankruptcy." *Id.* Alternatively, the Trustee contends that if CHC's commercial or business activities were insufficient then "the Debtor has been and is currently engaged in ongoing commercial and business activities relating to her 50% ownership interest in [Tom Murray]." *Id.* at ¶ 7. In sum, the Trustee believes this "is not a close call[,]" asserting "[the Debtor's] defense of ULM's lawsuit on her guaranty may itself be sufficient to satisfy that requirement[,] [b]ut when combined with her current activities, albeit modest, with [Tom Murray] . . . there can be no real dispute that this requirement is met as well." *Id.* at ¶ 11.

## DISCUSSION

The Bankruptcy Code sets the following four requirements for a debtor to be eligible for subchapter V: (1) meet the definition of a "person"; (2) be "*engaged in commercial or business activities*"; (3) have "aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition . . . in an amount not more than $7,500,000 . . . "; and (4) "not

5

less than 50 percent of which *arose from the* commercial or business activities of the debtor . . . ." *See* 11 U.S.C. § 1182(1)(A) (emphases added).

Here, the parties do not dispute that Hillman, an individual, meets the Bankruptcy Code's definition of a "person." *See* 11 U.S.C. § 101(41). Further, as previously mentioned, it is not in dispute that Hillman's relevant total debts as of the Petition Date are less than the subchapter V limit and that not less than 50% of the Debtor's aggregate debt arose from commercial or business activities of the Debtor. (ECF No. 133). Accordingly, this Court focuses on the following two remaining eligibility inquiries: (1) what actions are necessary for a debtor to be "engaged in commercial or business activities" and (2) does fifty percent or more of the debtor's aggregate debt have to arise from the same commercial or business activities relied upon for subchapter V eligibility ("Nexus Requirement")?

### I.      Burden of Proof.

The Bankruptcy Code does not indicate who has the burden of proof in relation to subchapter V eligibility. However, "[t]he vast majority of courts addressing the issue have found that the debtor bears the burden of proof to establish eligibility to proceed under [s]ubchapter V." *In re Phenomenon Mktg. & Ent., LLC*, No. 2:22-bk-10132, 2022 Bankr. LEXIS 1189, at *3-4 (Bankr. C.D. Cal. Apr. 28, 2022) (citations omitted). Moreover, the Debtor's counsel concedes that it is the Debtor's burden to establish eligibility. (ECF No. 68, Hrg. at 11:13). Based upon the Debtor's counsel's statement along with the predominant caselaw, this Court finds that once an objection to a subchapter V designation arises it is the debtor's burden to establish eligibility.

### II.     Whether the Debtor Is Engaged in Commercial or Business Activities?

As a preliminary matter, the majority of bankruptcy courts reviewing subchapter V eligibility have found "engaged in" as having a temporal restraint and require the eligibility

6

analysis to review the debtor's activity as of the petition date.[6] *See Nat'l Loan Invs., L.P. v. Rickerson (In re Rickerson)*, 636 B.R. 416, 424-25 (Bankr. W.D. Pa. 2021); *see also In re Offer Space, LLC*, 629 B.R. 299, 305-06 (Bankr. Utah 2021) ("The plain meaning of 'engaged in' means to be actively and currently involved." (quoting *In re Thurmon*, 625 B.R. 417, 422 (Bankr. W.D. Mo. 2020))). The Court finds the majority view well-founded and therefore, determines that the Debtor must demonstrate she was presently engaged in commercial or business activities as of the Petition Date.

Next, in determining whether a debtor is engaged in commercial or business activities, bankruptcy courts adopt a "totality of the circumstances" approach. *In re Offer Space*, 629 B.R. at 306 (citation omitted); *see also In re RS Air*, 638 B.R. at 410 (citing *In re Rickerson*, 636 B.R. at 425-26). Most courts interpret § 1182's broad, encompassing phrase "commercial or business activities" as reflecting Congress' intent to provide wide availability for debtors to elect to file under subchapter V. *See In re Ikalowych*, 629 B.R. 267, 276-77 (Bankr. D. Colo. 2021). Moreover, courts have "gone on to observe that § 1182(1)(A) speaks only to whether the debtor was engaged in commercial or business activities – 'not whether the [d]ebtor was making a profit, actively operating, or intending to operate in the future.'" *In re RS Air*, 638 B.R. at 411 (quoting *Ikalowych*, 629 B.R. at 285).

While the Debtor predominately relies on Tom Murray for her qualifying engagement in commercial or business activity,[7] she also asserts CHC is "engaged in commercial or business

---

[6] A minority of bankruptcy courts have found engagement in such activities at some point in the past sufficient. *See In re Blanchard*, No. 19-12440, 2020 Bankr. LEXIS 1909, at *2 (Bankr. E.D. La. July 16, 2020); *In re Wright*, No. 20-01035, 2020 Bankr. LEXIS 1240, at *3 (Bankr. D.S.C. Apr. 27, 2020)). However, it has been noted these courts adopting this minority view "were two of the first to consider the issue." *NetJets Aviation, Inc. v. RS Air, LLC (In re RS Air, LLC)*, 638 B.R. 403, 410 (B.A.P. 9th Cir. 2022).

[7] It is straightforward, "without limitation, a person is engaged in commercial or business activities when she participates in the purchasing or 'selling of economic goods or services for a profit.'" *In re Blue*, 630 B.R. at 189 (quoting *In re Johnson*, No. 19-42063, 2021 Bankr. LEXIS 471, at *8 (Bankr. N.D. Tex. 2021)). ULM's contention

7

activities" based upon the State Court Action. (ECF No. 134 at 14). As previously noted, a debtor can qualify for a subchapter V absent the company's traditional business operations where the company is winding down. *See In re Port Arthur Steam Energy*, 629 B.R. at 237.

Here, there is no question that the State Court Action was pending as of the Petition Date and involves commercial litigation between ULM as plaintiff and CHC and the Debtor as co-defendants. The Court finds the Debtor's defense of the State Court Action which involves a defaulted commercial lease agreement by CHC and the Debtor's personal guaranty of same is sufficient winding down activity for the Debtor to satisfy the "engaged in commercial or business activities" requirement of § 1182(1)(A).[8]

### III. Whether A Nexus Is Required Between the Qualifying Commercial or Business Activity and the Qualifying Business Debt?

The Bankruptcy Code's language "not less than 50 percent of which *arose from the commercial or business activities of the debtor*" has created a split among bankruptcy courts. *See* 11 U.S.C. § 1182(1)(A) (emphasis added). Some courts find fifty percent or more of the total debt relating to any commercial or business activity is sufficient while other courts require fifty percent or more of the total debt to relate to the specific commercial or business activity (or activities) being relied upon by a debtor for subchapter V eligibility purposes. *See In re Blue*, 630 B.R. at 191 ("Nothing in the statute requires that there be a nexus between the qualifying debts and the Debtor's current business or commercial activities."); *but cf. In re Ikalowych*, 629 B.R. at

---

that little or scarce business activity is insufficient for subchapter V eligibility is unfounded – having even acknowledged a sale of goods for profit occurred in the sixty days preceding the Petition Date. Based on the evidence presented, Tom Murray was actively operating as of the Petition Date which meets and surpasses the threshold requirement of being merely "engaged in commercial or business activities" for purposes of § 1182(1)(A).

[8] The Court does not find a reason to distinguish between pursuing versus defending commercial litigation when determining subchapter V eligibility. *See In re Port Arthur Steam Energy*, 629 B.R. at 237.

287 ("[T]he debt must be tied to the particular type of commercial or business activities the Debtor is engaged in.").

The decision *In re Ikalowych* is often cited as the seminal case finding a Nexus Requirement between the debtor's "engage[ment] in commercial or business activities" and the qualifying debt as necessary to be eligible for subchapter V. 629 B.R. at 287. In so finding, the District of Colorado Bankruptcy Court explains as follows:

> But there is an important "the" in the Section 1182(1)(A) statutory text. More than half of the [d]ebtor's debts must have arisen from "*the* commercial or business activities of the [d]ebtor." So, the debt must be tied to the particular type of commercial or business activities the [d]ebtor engaged in.

*Id.* (emphasis in original).

The Court finds this reasoning to be persuasive and adopts same.

As of the Petition Date, the Debtor was engaged in commercial or business activity in both Tom Murray and CHC. The Debtor has $671,398.91 of scheduled debt relating to the commercial or business activity of CHC. This debt is greater than 50% of the total $957,038.00 of liabilities reflected in the petition. Accordingly, the Court finds the Debtor has satisfied the Nexus Requirement because "not less than 50 percent of [the total debt] arose from *the* commercial or business activities of the debtor." *See* 11 U.S.C. § 1182(1)(A) (emphasis added).

## CONCLUSION

For all the reasons stated, the Court finds the Debtor has met her burden of proving eligibility for subchapter V of Chapter 11 and may proceed accordingly.

Dated: June 2, 2023  /s/ Robert E. Littlefield, Jr.
Albany, New York  Hon. Robert E. Littlefield, Jr.
United States Bankruptcy Court