UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:
    MICHELLE CORBIN HILLMAN,

                               Case No. 22-10175
                               Chapter 11

                         Debtor.
_____

APPEARANCES:

Michael L. Boyle, Esq.
Boyle Legal, LLC
Attorney for Debtor
64 2nd Street
Troy, NY 12180

Douglas J. Pick, Esq.
Pick & Zabicki LLP
Attorneys for Debtor
369 Leington Ave., 12th Floor
New York, NY 10017

Lisa M. Penpraze, Esq.
Assistant United States Trustee
Leo O'Brien Federal Bldg.
11A Clinton Avenue, Room 620
Albany, NY 12207

Paul A. Levine, Esq.
Subchapter V Trustee
677 Broadway, 8th Floor
Albany, NY 12207

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

    Currently before the Court is the fee application ("Fee App") of Pick & Zabicki, LLP

("PZ"), attorneys for debtor Michelle Corban Hillman (the "Debtor" or "Hillman"). The United

1

States Trustee ("UST") objects to the Fee App. The Court has jurisdiction via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[1]

## BACKGROUND

On March 4, 2022 the Debtor filed a voluntary petition electing to proceed as a small business debtor under Subchapter V of Chapter 11 ("Sub V"). (ECF No. 1). The Debtor's petition lists ULM I Holding Corp. ("ULM") as the largest unsecured creditor. (ECF No. 2). On May 5, 2022 ULM filed an unsecured proof of claim totaling $671,398.91. (Claim 7-1).

On March 9, 2022 Paul Levine, Esq., was appointed Sub V Trustee. (ECF No. 15). On the same day, PZ filed a motion seeking to have Douglas Pick, Esq., admitted as attorney for the Debtor, *pro hac vice*. (ECF No. 13). The motion was denied. (ECF No. 18). On April 8, 2022 the Court signed an order authorizing the employment of PZ and Michael L. Boyle, Esq. ("Boyle") as co-counsel for the Debtor. (ECF No. 27).

On April 11, 2022 ULM filed an objection to the Debtor's designation as a Sub V. (ECF No. 28). On April 28, 2022 PZ filed opposition to the objection. (ECF No. 42). On April 13, 2022 a hearing on confirmation of the plan was set for May 18, 2022. (ECF No. 35). On May 9, 2022 ULM objected to confirmation of the Debtor's plan. (ECF No. 43).

On May 10, 2022 the UST filed a motion on shortened notice to dismiss the case. (ECF No. 46). On May 16, 2022 the Debtor filed an objection to ULM's claim. (ECF No. 61). On May 17, 2022 the Debtor filed opposition to the UST's motion. (ECF No. 65). On the same day, ULM filed pleadings in support of the UST's motion to dismiss. (ECF No. 66). On May 23, 2022 the UST supplemented its motion to dismiss. (ECF No. 70). Also on that date, the UST

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2024) (the "Bankruptcy Code").

filed a motion for a Federal Rules of Bankruptcy Procedure ("FRBP") 2004 ("Rule 2004") examination of the Debtor. (ECF No. 71).

The Court carried the status conference and the claims motion together with several other matters. On May 18, 2022 the Court held the §1188 conference and heard argument on the UST's motion to dismiss. All other matters were adjourned to June 30, 2022 then again to September 12, 2022. (ECF No. 23).

At the September 12, 2022 hearing, the Debtor and ULM were directed to provide the Court with a stipulated set of facts regarding the Debtor's Sub V election. On October 4, 2022 the parties filed the stipulation (ECF No. 128). The eligibility question was one of first impression for this Court. A briefing order was entered and the matter was fully submitted on December 9, 2022. (ECF No. 132). The UST's motion to dismiss, confirmation of the plan and the Debtor's objection to ULM's claim were adjourned pending a determination of Debtor's eligibility.

On June 2, 2023 this Court found Hillman eligible to proceed under Sub V. On June 28, 2023 the Sub V Trustee filed an application for compensation. (ECF No. 132). On July 4, 2023 final fee applications for the bookkeeper and accountant were filed. (ECF Nos. 155-56). Also on that date, Boyle filed a fee request in the amount of $9,977.50. (ECF No. 157). On July 5, 2023 PZ filed its Fee App requesting $93,615.50 in fees and $2,799.20 in expenses. (ECF No. 159). On July 19, 2023 the UST filed the current objection to PZ's Fee App.

On July 26, 2023 the Court confirmed the Debtor's plan and granted the fee requests of the Sub V Trustee, bookkeeper, accountant, and Boyle. The Court reserved decision on PZ's Fee App. The issue was fully submitted on September 8, 2023. (ECF No. 190).

## ARGUMENTS

The UST objects both procedurally and substantively to PZ's Fee App. First, it points to numerous deficiencies in the Fee App and argues it does not comply with Local Bankruptcy Rule 2016.[2] Second, it indicates certain matters did not benefit the estate and PZ should not be compensated for them. The UST specifically points to fees pertaining to the Rule 2004 examination along with a belated request to have an appraiser appointed to value certain memorabilia.

PZ disagrees, contending all billed services benefitted the Debtor's estate and that, despite the UST seeking dismissal of the case and ULM's objecting to confirmation, the Debtor was able to ultimately confirm a consensual plan. It also takes exception to certain characterizations made by the UST in its objections to the Fee App. PZ contends it had to respond to numerous issues raised by the UST. Finally, it asserts that from the inception of this

---

[2] Local Bankruptcy Rule 2016-1, "COMPENSATION OF PROFESSIONALS IN A CHAPTER 11 CASE," states in relevant part:

> (a) Applications for Compensation. Applications for compensation shall comply with all requirements, including those related to format, outlined in Fed. R. Bankr. P. 2016(a) and the United States Trustee Fee Guidelines, which are available at www.justice.gov/ust/r02.
>
> (b). . . . Each application shall include:
>
> (1) The date the applicant was appointed by the Court . . .
> (3) A concise summary of the professional and paraprofessional services rendered, including:
> > (A) A factual explanation of the nature and extent of services performed, the results obtained, and the size of the estate
> (4) An exhibit consisting of contemporaneous daily time records for all professionals and paraprofessionals, arranged in a project billing format as suggested by the United States Trustee Fee Guidelines.
> (7) A statement describing the estate's ability to pay the fees requested and the status of fees owed to other administrative claimants of equal priority to the extent the professional is employed pursuant to §§ 327 or 1103 and compensation is sought from the estate and not a third party;
> (8) A specific description of the basis and justification for the request in terms related to the benefit of the services to the estate to the extent an enhancement of fees beyond those supported by the time records is sought. . . .

4

case, the UST acted aggressively which increased the work required and escalated the fees requested.

## DISCUSSION

This Court is no stranger to fee applications and it is undeniable that problems arose immediately after the filing of this case. The tone and tenor of the arguments both in pleadings and at hearings indicate substantial differences between the UST and PZ. Despite these issues, this case was a success. The Court is now tasked with determining reasonable remuneration.

To determine a presumptively reasonable fee award, the Second Circuit utilizes a modified lodestar approach which includes in its analysis the twelve relevant factors originally enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson* factors").[3] The Second Circuit explains:

> We think the better course -- and the one most consistent with attorney's fees jurisprudence -- is for the district court, in exercising its considerable discretion, to bear in mind all of the case-specific variables. . . The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors. . . The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2007).

---

[3] The twelve *Johnson* factors are:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Shepherd v. Law Offs. of Cohen & Slamowitz, LLP*, No. 08 CV 6199, 2010 U.S. Dist. LEXIS 125224, at *6 n.3 (S.D.N.Y. Nov. 24, 2010) (citing *Johnson*, 488 F.2d at 717-19).

I. **The Reasonable Hourly Rate.**

Generally, when determining a reasonable hourly rate, a court considers "the prevailing rates in the district in which the court sits." *Polk v. New York State Dep't of Correctional Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

In the present case, Douglas Pick, Esq., bills at a rate of $495.00 per hour and Eric C. Zabicki Esq., bills at a rate of $415.00 per hour.[4] These hourly rates for attorney matters are reasonable.[5] However, they are excessive for tasks that can be performed by a paraprofessional.

**Administrative Matters**

The UST argues PZ should not be awarded any fees for ministerial matters, stating "[the administrative work] should not be separately billed because they are part of the firm's overhead and already incorporated into the attorney's hourly rate. . . ." (ECF No.180, pg. 2). The Court agrees that certain activities should not be billed at the attorney rate. However, PZ should receive compensation, albeit at a reduced rate. It is common for bankruptcy courts to reduce the rate for administrative tasks[6] to that of paraprofessionals. It has been determined:

> The Court should be mindful that not all services should carry the same compensation . . . . The fact that an experienced attorney elects to perform routine ministerial services which could be performed by others far less experienced does not increase the value and should not increase the cost to the estate for these services.

---

[4] The Court notes the present decision is not a cap on fees.

[5] The following are examples of hourly rates for attorneys approved by this Court: *In re Interstate Commodities, Inc.*, (Case No. 20-11139) (from $250.00 to $750.00); *In re Good Samaritan Lutheran Health Care Center, Inc. and Kenwood Manor, Inc.* (Case No. 19-12215), the senior attorney discounted the 2020 hourly rate from ($965.00 to $820.25).

[6] *See In re Wilson,* Case No. 18-42302. 2022 Bankr. LEXIS 3 at *53 (Bankr. E.D.N.Y. Jan. 3, 2022), (collecting cases including: *In re Kieffer*, 306 B.R. 197, 206 (Bankr. N.D. Ohio 2004) (quoting *In re Union Cartage Co.*, 56 B.R. 174, 178 (Bankr. N.D. Ohio 1986)). As another court observed, "[c]ompensation for routine work should be discounted." *In re Ferkauf, Inc.*, 42 B.R. 852, 858 (Bankr. S.D.N.Y. 1984) (citing *Matter of Minton Group, Inc.*, 33 B.R. 38, 41, 10 B.C.D. 1233 (Bankr. S.D.N.Y. 1983))); *See also*, *Matter of Dee's Resort Wear, Inc.*, 25 B.R. 591, 591-92 (Bankr. M.D. Fla. 1982).

*In re Wilson*, Case No. 18-42302, 2022 Bankr. LEXIS 3 at *81(Bankr. E.D.N.Y. Jan 3, 2022)

This Court will allow $175.00[7] per hour for the administrative matters. PZ indicates 53.4 hours were dedicated to administrative work and therefore, the Court finds $9,345.00[8] to be a reasonable amount for these tasks.

## II. The Hours Reasonably Expended.

Once the reasonable hourly rate is determined, the Court must decide the appropriate amount of time spent on a matter while "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. Additionally, "[i]n determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours. . . ." *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17-cv-8987, 2022 U.S. Dist. LEXIS 25036, at *34 (S.D.N.Y. Feb. 9, 2022) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

PZ claims it spent a total of 200.5[9] hours from the inception of this case to and through confirmation. (ECF No. 180, pg. 15). The UST does not directly dispute the hours expended. Rather, as previously noted, it argues some of the tasks undertaken were not beneficial to the estate.

---

[7] This amount is derived by the Court averaging the paraprofessional rates in certain cases before it. See, *In re The Roman Catholic Diocese of Albany, New York*, Case No. 23-10244 (average $242.50); *In re AH Development,* Case No. 23-10387 (average $125.00) and *In re Central Parkway,* Case No. 23-30367 (average $157.50).

[8] 53.4 x $175 = $9,345.00.

[9] The Court has previously addressed 53.4 hours of the 200.5 requested in the Administrative Matters section of this decision.

### A.    Rule 2004 Examination.

The UST indicates PZ should not receive any fees for work performed regarding Rule 2004[10] examination, contending the motion would not have been necessary if the Debtor had simply responded to its request for information. (ECF No. 166, pg. 5). PZ argues the $8,717.50 requested was not incurred in opposition to the request. (ECF No. 190 pg. 10). Rather, PZ argues the fees were earned in providing the UST with the requested information.[11] The request of $8,717.50 is reasonable and approved. The Court does not want to chill a debtor's attorney's advocacy by withholding remuneration for representing their client.

### B.    Retaining the Appraiser.

The petition lists memorabilia valued at $18,000.00. (ECF No. 2). On March 16, 2022 the UST requested an "appraisal value" of the personal property. (ECF No. 180, pg. 5). Based upon this request, Hillman hired an appraiser who prepared a valuation which was then provided to the UST. PZ contends it was not until after the UST received the completed appraisal that it indicated the appraiser, as a professional, should have been appointed by the Court.

On July 7, 2022 PZ filed an application to employ the appraiser *nunc pro tunc*. (ECF No. 104). The UST promptly objected, arguing that retroactive employment cannot be

---

[10] It does not escape the Court's attention that the Rule 2004 examination motion was filed during a flurry of activity in the case. On May 9, 2022 ULM objected to confirmation of the plan. (ECF No. 43). On the very next day the UST filed a motion to dismiss the case, requesting it be heard on May 18, 2022 along with the confirmation. (ECF No. 46). On May 17, 2022 the Debtor responded to the UST's motion to dismiss the case. (ECF No. 66). On May 23, 2022 the Rule 2004 motion was filed. (ECF No. 71).

[11] PZ indicates all fees requested under the Rule 2004 Examination category were for compliance with the request. PZ points out the billing under the Rule 2004 Examination commenced July 1, 2022 which was the day after the Order granting the UST's request was entered.

approved. (ECF No. 106). In its objection, the UST challenged the qualifications of the appraiser and the lack of information in the appraisal. *Id*. On August 17, 2022 the Court heard arguments on the retention request. After vigorous debate, PZ withdrew the motion as the Debtor's husband was willing to pay the appraiser. (ECF No. 119). The UST now objects to all fees requested for this undertaking. (ECF No. 180, pg. 5).

The UST does not deny it requested an appraised value of the memorabilia. Nevertheless, it argues that, because the application to appoint was delayed and ultimately withdrawn, PZ should not be remunerated for this work. The Court disagrees. If the Debtor had not obtained the appraisal, liquidation would have been at issue and a plan could not have been confirmed. Moreover:

> As one bankruptcy court explained, "[a] decision reasonable at first may turn out wrong in the end. The test is an objective one, and considers 'what services a reasonable lawyer or legal firm would have performed in the same circumstances.' . . . *See In re Brous*, 370 B.R. 563, 574 (Bankr. S.D.N.Y. 2007) (finding that "[a]lthough the outcome was disappointing, the services were nonetheless reasonable at the time that they were rendered.") . . . .
>
> For these same reasons, the success or failure of the particular claim or position is not the sole determinant of whether the services in question were ultimately "necessary and beneficial" to the debtor or the debtor's estate. As one court put it, legal services that "are performed well, with due adherence to an attorney's duties and in the good faith litigation . . . are 'necessary' and 'beneficial' services for which compensation is owed, regardless of whether the client won or lost the underlying case." *In re Haimil Realty Corp.*, 579 B.R. 19, 27 (Bankr. S.D.N.Y. 2017) (citing *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM)*, 210 B.R. 19, 24, 27 (B.A.P. 2d Cir. 1997)).

*In re Wilson,* Bankr. LEXIS 3 at *53.

The UST requested the appraisal. Thus, it was necessary for confirmation and beneficial to the estate. The Court approves the fees for retaining the appraiser.

### C. Emails.

The UST also objects to certain emails. It states,

> [W]e noticed a pattern of billing with regard to the work performed by Mr. Zabicki. There appears to be a pattern of Mr. Zabicki billing 0.3 hours for many of his email transmissions. . . . While it is anticipated that the drafting and review of *some* emails may take 18 minutes. . . it seems unusual for 0.3 to be the norm.

(ECF No.180, pg. 6).

Interestingly, the UST does not articulate a specific objection to the requested 8.5 hours ($4,135.00). Rather, it merely notes its suspicion for the record. This Court has reviewed the time records and finds the amount requested is reasonable. While there may be numerous email billings at 0.3 hours, there are billings for other amounts as well. The requested fees for the emails are approved.

### D. Failure to comply with Rules and Procedures.

The UST points to numerous violations of FRBP and Local Bankruptcy Rule 2016. The UST contends PZ's Fee App "lacks project billing categories," fails to include a statement regarding the Debtor's ability to pay and contains block billings. (ECF No. 166, pg. 3). The Court agrees there are certain deficiencies, including but not limited to lumping and vagueness.[12] However, the Court will not deny the fee application *in toto* due to the deficiencies pointed out by the UST. Rather, utilizing its discretion, this Court reduces the total fee awarded by 10%[13] to address the insufficiencies in the Fee App.

---

[12] An example of lumping is the March 9, 2022 time entry, "Retrieve and review claims bar date and case conference order; email D. Pick and M. Boyle." An example of vagueness is the March 15, 2022 time entry "Meeting with Debtor." (ECF No. 159).

[13] Bankruptcy Courts often discount a fee-applications by percentages because:

> Across the board percentage cuts in the fees claimed are routinely utilized so that courts do not misuse their time "set[ting] forth item-by-item findings concerning what maybe countless objections to individual billing items." McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006); Williamsburg Fair Housing Committee v. The New York City Housing Authority, 2007 U.S. Dist. LEXIS 11328, 2007 WL 486610, *5 (S.D.N.Y. February 14, 2007);

**E. Fee paid by parties other than the Debtor.**

Finally, PZ argues its fees are being paid by a third party and therefore, the Court should limit its review of the request for remuneration. The Court disagrees. "The court is obliged to ascertain the reasonableness of the compensation paid for debtors by third parties . . . and in fact has the duty to do so, even if no party objects. . . ." *In re Greco*, 246 BR 226, 230 (Bankr. E.D. Penn. 2000) (citing *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 840-45 (3d Cir. 1994)). Thus, this Court reviewed the fee application in the ordinary course.

## CONCLUSION

There is no denying that when this case was commenced issues arose and unnecessarily escalated. However, the plan was confirmed on consent. While this fee application is higher than most, this Court finds the following fees reasonable and are approved.

|  | **Requested** | **Approved** |
|---|---|---|
| **Administrative** | $24,841.00 | $9,345.00 |
| **Claims** | $8,667.00 | $8,667.00 |
| **Hearings** | $5,049.00 | $5,049.00 |
| **Motions** | $24,473.00 | $24,473.00 |
| **Plan** | $11,272.50 | $11,272.50 |
| **Professionals** | $7,210.50 | $7,210.50 |
| **Rule 2004** | $8,717.50 | $8,717.50 |
|  | -------------- | ---------------- |
|  | $93,615.50 | $74,734.50 |
| **Reduction for Failure to comply with local rules** |  | -10% $7,473.45 ---------------- $67,261.05 |

---

Daiwa Special Asset Corp., 2002 U.S. Dist. LEXIS 23073, 2002 WL 31767817, *2 (citing Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). See also In re Poseidon Pools of America, 180 BR. at 751; In re Navis Realty, Inc., 126 B.R. at 144; In re Adventist Living Ctrs., Inc., 137 B.R. 701, 706 (Bankr.N.D.Ill. 1991) In re Poseidon Pools of America, 180 BR. at 751; In re Navis Realty, Inc., 126 B.R. at 144; In re Adventist Living Ctrs., Inc., 137 B.R. 701, 706 (Bankr.N.D.Ill. 1991).

*In re Baker*, Case No. 1-01-24277, 2010 Bankr. LEXIS 151, at *7 (Bankr. E.D.N.Y. Jan. 11, 2010).

There was no objection to PZ's request for reimbursement of expenses of $2,799.20. After review, the Court finds these expenses reasonable and are also approved.

For the reasons articulated the total award amount is **$70,060.25** broken down as follows: $67,261.05 (fees) and $2,799.20 (expenses).

Dated: February 2, 2024
Albany, New York

/s/ Robert E. Littlefield
Hon. Robert E. Littlefield, Jr.
United States Bankruptcy Judge